UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIANI DODSON and LOIS DODSON,

Plaintiffs,

v.

KARLA NAVA LOPEZ, DION EMANUEL,
PETER YI, ERNEST WILSON, S.K. KUE,
B.I. FERREIRA, F. TOTI, S.W.
CHOUCAIR, and CITY OF DETROIT,

Defendants.

Case No. 20-cv-12056

U.S. District Court Judge
Gershwin A. Drain

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (ECF No. 36)

### I.   INTRODUCTION

On July 30, 2020, Plaintiffs Tiani Dodson and Lois Dodson initiated this civil rights action against Defendants Karla Nava Lopez, Dion Emanuel as well as the City of Detroit ("Detroit" or the "City") and Detroit police officers Peter Yi, Ernest Wilson, S.K. Kue, B.I. Ferreira, F. Toti, and S.W. Choucair (collectively the "Detroit Defendants"). *See* ECF No. 1. Plaintiffs' claims arise from an allegedly improper ejectment from their home. *Id*. On January 6, 2023, this Court issued an opinion and order denying the City's Motion for Partial Summary Judgment (ECF No. 26)

1

and denying Plaintiffs' Motion for Partial Summary Judgment (ECF No. 27). *See* ECF No. 35.

Presently before the Court is Plaintiffs' Motion for Reconsideration Pursuant to LR 7.1(h)(2) ("Plaintiff's Motion for Reconsideration"). *See* ECF No. 36. The court ordered Defendants to respond to the motion, *see* E.D. Mich. LR (h)(3), and the Detroit Defendants timely did so, *see* ECF No. 37. Plaintiff also filed a reply. *See* ECF No. 38. The Court does not find that oral argument would aid in the disposition of this matter and will resolve the instant motion on the briefs. *See* E.D. Mich. LR (h)(3). For the following reasons, the Court will **DENY** Plaintiffs' Motion for Reconsideration (ECF No. 36).

## II. BACKGROUND

### A. Factual Background

The relevant factual background from the Court's January 6, 2023 Opinion and Order is incorporated below.

#### 1. The Dodson's Possession of the Residence

On or about July 3, 2017, Plaintiff Tiani Dodson and her daughter, Plaintiff Lois Dodson, took possession of a residential property located at 6416 Barton in Detroit, Michigan (the "Residence"). T. Dodson Depo. 8–9, ECF No. 26-4, PageID.178. Defendant Nava Lopez owned the Residence, but her adopted father, Orlando Watkins, oversaw the property for her while she was in California. *Id.* at 910, PageID.178–79. Immediately prior to moving into the Residence, Ms.

Dodson made a verbal agreement with Mr. Watkins, Lois Dodson's basketball coach, that she could fix up the house in lieu of paying rent.[1] *Id.* Pursuant to this agreement, Ms. Dodson painted, installed drywall, repaired the roof, repaired the porch, painted the porch, removed "mounds and mounds of debris," and laid a bathroom floor. *Id.* at 12, PageID.179.

In January or February of 2019, Ms. Nava Lopez called Ms. Dodson and informed her that she would need to start paying rent in April of that year. *Id.* at 11, PageID.179. Ms. Dodson was no longer able to reach Mr. Watkins from that point forward. *Id.* at 14, PageID.180. Instead, in March 2019, Ms. Dodson received a letter stating that Defendant Emanuel was the Residence's new property manager and that all rent payments should be made to him. *Id.* at 13–15, PageID.179–80. Mr. Emanuel also provided Ms. Dodson with a residential lease agreement for a month-to-month term that listed Ms. Nava Lopez as the landlord and Ms. Dodson as the tenant. *Id.* at 13, PageID.179; ECF No. 27-13, PageID.401. It's unclear whether Ms. Nava Lopez ever signed the lease agreement as Ms. Dodson does not appear to have received a copy of the executed agreement. *See* T. Dodson Depo. 12–13, ECF No. 26-4, PageID.179.

Ms. Dodson received a letter in April saying that her landlord could have her evicted if she did not move by June 6, 2019 (the "Notice to Quit"). *Id.* at 16–17, PageID.180. Ms. Dodson tried to contact Mr. Emanuel, Mr. Watkins, and Ms. Nava Lopez about the letter but received no response. *Id.* at 18, PageID.181. Although she did not begin paying rent at this time, Ms. Dodson continued to pay the utilities. *Id.* Ms. Dodson did not start paying rent into an escrow account at this time because she did not learn what those were until after her ejectment. *Id.* at 63, PageID.192.

---

[1] Hereinafter, the Court will refer to Tiani Dodson as "Ms. Dodson" and her daughter by her full name.

3

### 2. The Ejection

During the morning of November 9, 2019, Lois Dodson called her mother, who was out at the time, to inform her that Ms. Nava Lopez, whose name Lois did not know at the time, was at the Residence saying that she was there to evict the Dodson's. L. Dodson Depo. 18–19, ECF No. 27-14, PageID.419. Upon Ms. Dodson's arrival, Ms. Nava Lopez informed her that she had called the police.[2] T. Dodson Depo. 29, ECF No. 26-4, PageID.183. Ms. Dodson also called the police and testified that the dispatcher agreed with her that she could not be evicted without having first been to court. *Id.* at 29–30, PageID.18384.

Defendants Yi and Ferreira were the first to arrive to the scene, with Defendants Toti and Choucair acting as the assisting unit. Toti Depo. 12, ECF No. 27-9, PageID.322. Ms. Dodson testified that the officers initially informed Ms. Nava Lopez that there was nothing they could do. T. Dodson Depo. 29–30, ECF No. 26-4, PageID.183–84. The officers called their sergeant, Defendant Kue, for support. Kue Depo. 7, ECF No. 26-5, PageID.209. Upon his arrival, Sergeant Kue asked Ms. Dodson for any paperwork that she had. T. Dodson Depo. 30, ECF No. 26-4, PageID.184. Sergeant Kue recalled that Ms. Nava Lopez had what "appeared to be like a deed and some kind of eviction notice or paperwork," although he could not recall what the paperwork entailed. Kue Depo. 16, ECF No. 26-5, PageID.211. When discussing the incident later with then Sergeant Wilson, Sergeant Kue explained that he had reviewed the Notice to Quit. Wilson Depo. 34–36, ECF No. 28-6, PageID.508.

In contrast, Ms. Dodson described her verbal agreement with Mr. Watkins'[], whose name she could not remember, and provided paperwork that was unsigned. Kue Depo. 16, ECF No. 26-5,

---

[2] It is unclear from the record whether Ms. Nava Lopez, in fact, called the police as the Defendant Officers only testified about being dispatched to address Ms. Dodson's call.

4

    PageID.211.  Additionally, the officers noted the Residence had an illegal electrical hookup, which is indicative of someone illegally living at a location, *id.* at 17, PageID.211, although Officer Ferreira recalled Ms. Dodson providing a utilities bill that was only a couple months old, Ferreira Depo. 23, ECF No. 27-8, PageID.305.  None of the officers recalled reviewing an eviction complaint or the 36th District Court docket to determine whether there were ongoing eviction proceedings involving Ms. Dodson and Ms. Nava Lopez, and there were not bailiffs present at the scene.  *See, e.g.*, Kue Depo. 16–17, ECF No. 26-5, PageID.211.  Nevertheless, Sergeant Kue told Ms. Dodson that her lease was fraudulent and asked her to stay in the living room while he spoke with Ms. Nava Lopez privately.  T. Dodson Depo. 30, ECF No. 26-4, PageID.184.  He also spoke with Ms. Dodson privately.  Toti Depo. 18, ECF No. 27-9, PageID.324.

    Officer Kue unsuccessfully encouraged Ms. Dodson and Ms. Nava Lopez to peacefully resolve the issue amongst themselves.  *See, e.g.*, Ferreira Depo. 28, ECF No. 27-8, PageID.306.  As such, [b]ecause Ms. Dodson could not provide proof of ownership or lawful residence other than her furniture being in the residence, Sergeant Kue advised her to leave the premises to avoid a physical altercation between her and Ms. Nava Lopez.  Kue Depo. 18, ECF No. 26-5, PageID.212.  Ms. Dodson specifically remembers Sergeant Kue telling her that she had to leave the Residence and Officer Ferreira telling her friend that she would be leaving that day.  *Id.* at 31–33, PageID.184.  Officer Toti testified that Sergeant Kue "was the only one to make that call." Toti Depo. 18–19, ECF No. 27-9, PageID.324; *see also* Yi Depo. 12, [ECF No. 27-10,] PageID.341.  Notably, the Detroit Police Department Incident Report states, "[The] supervisor arrived on scene and after reviewing the eviction paperwork and seeing that it was valid, stated to the complainant, that she had to vacate the premises."  ECF No. 26-2, PageID.171.

ECF No. 35, PageID.748–52 (footnotes in original).

### B. Procedural Background

As stated in the Court's January 6, 2023 Opinion and Order, Defendants failed to timely respond to Plaintiffs' Motion for Partial Summary Judgment (ECF No. 26), and the Court denied leave for the Detroit Defendants to file a late response. Nevertheless, in resolving Plaintiffs' Motion for Partial Summary Judgment, the Court found there was a genuine dispute as to whether Plaintiffs had a lawful possessory interest in the Residence. ECF No. 35, PageID.768–70. The Court thus denied summary judgment on Plaintiffs' Fourth Amendment, Fourteenth Amendment, and *Monell* claims. *Id.* at PageID.770, 772.

In the instant Motion for Reconsideration, Plaintiffs argue the court erred in determining there was a question of fact as to whether Plaintiffs were tenants or otherwise established a possessory interest in the Residence because they attached to their Motion for Partial Summary Judgment the lease agreement and Notice to Quit that identified Ms. Dodson as a "tenant" and Ms. Nava Lopez as her "landlord." ECF No. 36, PageID.780. Plaintiffs further assert that the Detroit Defendants "never contested" Plaintiffs' possessory interest because "they had no information or evidence that would contradict that fact." *Id.* at PageID.781.

6

### III.  LAW & ANALYSIS

#### A. Legal Standard

Plaintiffs move for reconsideration under this District's Local Rules. *See* ECF No. 36. Nevertheless, there initial Motion seems to rely on an earlier version of the rule governing motions for reconsideration, *see id.* at PageID.779, which was revised on December 1, 2022.[3] The current edition of Local Rule 7.1(h) states that motions for reconsideration may only be brought upon the following grounds:

> (A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;
>
> (B) An intervening change in controlling law warrants a different outcome; or
>
> (C) New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

E.D. Mich. LR 7.1(h)(2).

#### B. Discussion

As a preliminary matter, the Court notes that Plaintiffs' Reply was procedurally improper. Local Rule 7.1.(h)(3) explicitly states that "[n]o response to

---

[3] The Court acknowledges that Plaintiffs quote the updated LR 7.1(h)(2)(A) in their Reply. *See* ECF No. 38, PageID.793.

the motion . . . [is] permitted unless the court orders otherwise." E.D. Mich. LR 7.1(h)(3). The Court's text-only order on January 27, 2023 only directed Defendants to respond to Plaintiffs' motion by February 10, 2023; it did not authorize Plaintiffs to file a reply. Nevertheless, the Court will consider Plaintiffs' Reply along with the other pleadings.

Turning to the merits of Plaintiffs' arguments, the Court first addresses Plaintiffs' assertion that the issue of Plaintiffs' possessory interest in the Residence "was not contested and only raised *sua sponte* by the Court." ECF No. 36, PageID.778. As stated in Section II, Subsection B *supra*, Defendants failed to timely respond to Plaintiff's Motion for Partial Summary Judgment (ECF No. 27), and the Court denied Defendants' Motion for Leave to File a Late Response (ECF No. 29). When a defendant fails to timely respond to a motion for summary judgment, a court "may not grant [the p]laintiff's unopposed motion for summary judgment without conducting its own, searching review." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014) (citation omitted). Instead, the court "must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *Id*. This is because "[a] party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests

8

with the movant." *Id.* (alteration in original) (quoting *Smith v. Hudson,* 600 F.2d 60, 64 (6th Cir. 1979)).

Thus, the Court reviewed the record to determine whether there was any genuine dispute of material fact regarding each of the claims on which Plaintiffs sought summary judgment. The burden was on Plaintiffs to establish each of the elements of their claims. *See Vance v. Latimer*, 648 F. Supp. 2d 914, 919 (E.D. Mich. 2009). Additionally, the Court is explicitly directed to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Therefore, it was not a "mistake," E.D. Mich. LR 7.1(h)(2), for the Court to *sua sponte* assess whether Plaintiffs had a lawful possessory interest in the Residence—an element essential to each of the claims on which Plaintiffs moved for summary judgment.

Finally, the Court addresses Plaintiffs' contention that "[t]here is no question of fact" as to whether they had a lawful possessory interest in the Residence." ECF No. 36, PageID.778. Specifically, Plaintiffs argue that neither "[t]he City of Detroit, nor any of its officers, []ever contested" Plaintiffs' lawful possessory interest in the Residence. *Id.* at PageID.781. The Court disagrees. While Defendants were not permitted to file a late response to Plaintiffs' Motion, there is evidence in the record that the Defendant Officers did not believe Plaintiffs had a lawful possessory interest in the Residence. For example, the police report states that the Defendant Officers

9

determined, after reviewing the paperwork from Ms. Dodson and Ms. Nava Lopez, that Ms. Dodson "was misled into believing that she was leasing the home by a third party." ECF No. 26-2, PageID.171. Though the Defendant Officers' determination is not conclusive, the Court may consider it in resolving the summary judgment motion. *See* Fed. R. Civ. P. 56(c).

Additionally, the Defendant Officers noticed an illegal electricity hookup in the rear of the house, which Sergeant Kue testified "is indicative of squatters or someone who is illegally living at a location." ECF No. 26-5, PageID.211. Plaintiffs argue that the fact of the illegal electrical hookup is nonmaterial. ECF No. 38, PageID.795–96. However, Plaintiffs mischaracterize the question before the Court. The Parties do not dispute whether there was an illegal electrical hookup; if they did, that fact would be nonmaterial to proving the elements of Plaintiffs' claims and thus the dispute over it would be insufficient to survive summary judgment. *See Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). Instead, the Court found a genuine dispute as to whether Plaintiffs had a lawful possessory interest in the Residence, a fact that is undoubtedly material and something on which the illegal electrical hookup has bearing. The meaning of the electrical hookup with regard to Plaintiffs' lawful possessory interest and how much weight to assign it are questions for the jury. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

Plaintiffs also argue that month-to-month leases are not subject to the Statute of Frauds and thus do not have to be in writing. ECF No. 36, PageID.783. Plaintiffs are correct. *See* M.C.L. 566.108. However, Plaintiffs still need to prove that a valid agreement to lease the Residence existed between the Ms. Dodson and Ms. Nava Lopez. In Michigan, "[a] valid contract requires: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Barclae v. Zarb*, 300 Mich. App. 455, 471, 834 N.W.2d 100, 113 (2013). The Court cannot say as a matter of law that all these elements have been established such that no "rational trier of fact [could] find" for Defendants. *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 491 (6th Cir. 2020) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

As Ms. Dodson testified, the first time she spoke to Ms. Nava Lopez was in January or February 2019, when Ms. Nava Lopez told Ms. Dodson that she would have to start paying rent the following April. In March 2019, Mr. Emanuel provided Ms. Dodson with a lease agreement listing Ms. Dodson as "tenant" and Ms. Nava Lopez as "landlord," but which Ms. Nava Lopez herself had not signed. Ms. Dodson was supposed to return the lease to Mr. Emanuel once she signed it so that Ms. Nava Lopez could sign it and Mr. Emanuel could give Ms. Dodson a copy of the executed agreement, but this does not appear to have occurred. *See* ECF No. 26-4, PageID.179. Ms. Dodson did not begin paying rent in April, and Ms. Nava Lopez

11

sent her the Notice to Quit by June 6, 2019. Ms. Nava Lopez had Plaintiffs ejected in November.

There are several genuine disputes of fact regarding the formation of the purported agreement to lease the Residence. Viewing the evidence in the light most favorable to the nonmovant, *Anderson*, 477 U.S. at 255, it is not certain Mr. Emanuel was, in fact, Ms. Nava Lopez's agent and did not attempt to mislead Plaintiffs with the lease agreement. Assuming, the lease agreement was a valid offer from Ms. Nava Lopez, there is still a question of fact as to whether there was valid acceptance. With respect to the formation of a lease contract in Michigan, "an offeror who is not notified of acceptance within a reasonable time may treat the offer as having lapsed before acceptance." M.C.L. 440.2856. Additionally, "[w]here the tenant is in possession at the date of the alleged oral agreement between himself and the landlord, his continued possession is not an act of part performance." *Dabanian v. Rothman*, 291 Mich. 31, 35, 288 N.W. 324, 325 (1939). As stated *supra*, it is uncertain whether Ms. Nava Lopez was ever informed that Ms. Dodson had signed (accepted) the lease offer, and Ms. Dodson never began paying rent—her consideration under the agreement. There is thus a question of fact as to whether the offer of the lease agreement lapsed prior to being accepted. It is also notable that two of the three interactions Ms. Nava Lopez had with Ms. Dodson were aimed at removing Plaintiffs from the Residence: the Notice to Quit and the ejection itself.

12

The undersigned notes that the Michigan Court of Appeals has upheld a trial court's determination that the testimony of two witnesses, a copy of an unsigned lease, the lessors monthly rent payments, and evidence of two prior leases between the parties "did not constitute clear and convincing proof of the existence of an enforceable contract." *Angell & Costopoulos, P.C. v. Southfield Data Processing, Inc.*, No. 215540, 2000 WL 33385194, at *2 (Mich. Ct. App. Dec. 26, 2000). While the month-to-month lease agreement at issue here did not need to be reduced to writing, the Court cannot say as a matter of law that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). Thus, the Court did not make a "mistake," E.D. Mich. LR 7.1(h)(2)(A), and Plaintiffs' Motion for Reconsideration must be denied.

### IV. CONCLUSION

Accordingly, for the reasons articulated above, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Reconsideration (ECF No. 36) is **DENIED**.

**IT IS SO ORDERED**.

/s/ Gershwin Drain  
GERSHWIN A. DRAIN  
UNITED STATES DISTRICT JUDGE

Dated: June 6, 2023

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 6, 2023, by electronic and/or ordinary mail.

/s/ Teresa McGovern  
Case Manager